# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

March 25, 2013

Lawrence P. Demuth, Esq.
Mignini, Raab and Demuth LLP
429 S. Main Street
Bel Air, MD 21014

Alex S. Gordon, Esq.
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201


        Re:  Ronnie Ray Weimer v. Michael J. Astrue, Commissioner,
             Social Security, Case No. SKG-11-00738

Dear Counsel,

        Plaintiff, Ronnie Weimer, by his attorneys, Lawrence P
Demuth, and Mignini & Raab LLP, filed this action seeking
judicial review, pursuant to 42 U.S.C. § 405(g), of the final
decision of the Commissioner of the Social Security
Administration ("the Commissioner"), who denied plaintiff's
claim for Supplemental Security Income ("SSI") under Title II of
the Social Security Act ("the Act"). 42 U.S.C. § 405(g).  This
case has been referred to the undersigned magistrate judge by
consent of the parties pursuant to 28 U.S.C. § 636(c) and Local
Rule 301. (ECF No. 5; ECF No. 7).

        Currently pending before the Court are cross motions for
summary judgment. (ECF No. 13; ECF No. 21).  No hearing is

1

necessary.  Local Rule 105.6.  For the reasons that follow, the
Court hereby DENIES plaintiff's motion for summary judgment (ECF
No. 13), and GRANTS defendant's motion for summary judgment (ECF
No. 21).

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security
income on June 7, 2007, (R. 119-22), alleging that he has been
disabled since January 22, 2001 due to a right arm nerve injury,
two compressed discs, and a damaged left knee joint.  (R. 140,
145).  Plaintiff's application was denied both initially on
September 24, 2007, (R. 74, 76-78), and on reconsideration on
January 8, 2008.  (R. 75, 83-84).  The plaintiff had an
administrative hearing on December 10, 2009.  (R. 35-72).  The
ALJ issued a decision on February 3, 2010, finding that
plaintiff was not disabled.  (R. 15-31).  The Appeals Council
denied plaintiff's request for review on January 22, 2011.  The
ALJ's opinion is therefore the final decision of the agency.
Plaintiff filed this action seeking review of that final
decision pursuant to 42 U.S.C. § 405 (g) on March 18, 2011.
(ECF No. 1).

## II.  Factual Background

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record in all material aspects, hereby adopts it.  (ECF No. 21-2, 3-16).

## III. ALJ's FINDINGS

In evaluating plaintiff's claim for disability insurance benefits, the ALJ was required to consider all of the evidence in the record and to follow the sequential five-step evaluation process for determining disability, set forth in 20 C.F.R § 416.920(a).[1] If the agency can make a disability determination at any point in the sequential analysis, it does not review the claims further. 20 C.F.R. § 1520(a). After proceeding through all five steps, the ALJ in this case concluded that plaintiff was not disabled as defined by the Act.

The first step requires plaintiff to prove that he is not engaged in "substantial gainful activity."[2]  20 C.F.R. § 416.920(a)(4)(I).  If the ALJ finds that plaintiff is engaged in

---

[1] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A) (2004).

[2] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part-time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when he worked before.  20 C.F.R. § 416.972(b). Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

substantial gainful activity, plaintiff will not be considered disabled.  Id.  The ALJ in the present case found that plaintiff did not engage in substantial gainful activity since his application date of May 21, 2007.  (R. 20).

At the second step, the ALJ must determine whether plaintiff has a severe, medically determinable impairment or a combination of impairments that limit plaintiff's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  There is also a durational requirement that plaintiff's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that through the date last insured, plaintiff had the following severe impairments: right brachial plexopathy, history of tibia fracture with residual knee instability, history of small L5-S1 disc herniation, side effects from extensive OxyContin treatment, and a complex regional pain syndrome.  (R. 20).

At step three, the ALJ considers whether plaintiff's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" ("LOI") in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  Here, the ALJ found that plaintiff did not have an impairment that meets or medically equals one of the listed impairments.  (R. 21).

4

Before an ALJ advances to the fourth step, he must assess plaintiff's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps.  20 C.F.R. § 404.1520(a)(4)(e).  RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p.  The ALJ must consider even those impairments that are not "severe."  20 C.F.R. § 404.1520(a)(2).

In determining a plaintiff's RFC, ALJs must evaluate the plaintiff's subjective symptoms (*e.g.*, allegations of pain) using a two-part test. <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.152. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms.  20 C.F.R. § 404.1529(b).  Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence.   SSR 96-7p,

1996 SSR LEXIS 4.  To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations.  Id.

Here, the ALJ found that plaintiff had the residual functional capacity to perform a range of light work activity as defined in 20 CFR 416.967(b) except that claimant is further limited to work with less than 5 pounds with the right upper extremity.  (R. 22).  In addition, the ALJ found that plaintiff is limited to work with only occasional stooping, squatting, crawling, kneeling, and grasping or gripping of the upper right extremity.  (Id.).  Because of the side-effects of plaintiff's medication, the ALJ limited claimant to unskilled work that involves understanding, remembering, and carrying out simple instructions.  (Id.).

At the fourth step, the ALJ must consider whether plaintiff retains the RFC necessary to perform past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ noted that plaintiff's past work as a utility lineman, truck driver, and cable technician all require medium exertion.  (R. 29).  Therefore, plaintiff was unable to perform any of his past relevant work.  (Id.).

Where, as here, plaintiff is unable to resume his past relevant work, the ALJ must proceed to the fifth and final step.

This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, plaintiff is capable of other work in the national economy. See 20 C.F.R. §§ 404.1520(f), 416.920(f).  At this step, the burden of proof shifts to the agency to establish that plaintiff retains the RFC to engage in an alternative job which exists in the national economy.  McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The agency must prove both plaintiff's capacity to perform the job and that the job is available.  Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before the agency may conclude that plaintiff can perform alternative skilled or semi-skilled work, it must show that plaintiff possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.  Here the ALJ found that plaintiff was capable of making a successful adjustment to work currently existing in the national economy.  (R. 30).  Specifically, the ALJ found that plaintiff could successfully work as an unskilled security worker, construction flagger, and machine tender.  (Id.).

The ALJ therefore found that the plaintiff was not under a disability at any time since May 21, 2007, the date the application was filed.  (Id.).

## IV.   STANDARD OF REVIEW

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence—not to try plaintiff's claim *de novo*.   King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).   This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.   42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).   Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance."   Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).   It is "such relevant evidence as a reasonable mind might accept to support a conclusion."   Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.   Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).   The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.   Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).   If the Commissioner's findings

are supported by substantial evidence, this Court is bound to accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing."  Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V.   Discussion

Plaintiff makes two primary arguments on appeal.  The Court shall address them in turn.

## A. The Weight Afforded Opinions of Physicians and Other Health Care Providers

Plaintiff argues that the ALJ erred in giving the opinion of Dr. Russell great weight while granting only slight weight to the opinions of plaintiff's "treating physicians," Drs. Kazi and Wiley. (ECF No. 13-1, 11).  Specifically, plaintiff contends that Dr. Russell's opinion is of limited value because he did not treat plaintiff subsequent to January 2003, while the later opinions of Drs. Kazi and Wiley should have, in contrast, been

9

assigned substantial weight.  (Id. at 13).  In addition,
plaintiff argues that the ALJ failed to adequately describe his
rationale for assigning little weight to the opinions of Drs.
Kazi and Wiley other than a "cursory statement" noting that the
medical opinions were inconsistent with the record.  (Id.).
Finally, plaintiff argues that the ALJ failed to thoroughly
consider and weigh the opinions of Dr. Martin and Lisa Stresky,
CNRP .[3]  (Id. at 11; ECF No. 24-1, 4).

   Defendant replies first that Drs. Kazi, Wiley, and Martin are
not "treating physicians" and are therefore not entitled to any
additional weight under the relevant regulations.  (ECF No. 21-
2, 18).  Defendant notes these doctors "merely performed workers
compensation evaluations for impairment ratings," and are
therefore not entitled to any deference.   (Id. at 17-18).
Moreover, defendant argues that the opinions of Drs. Kazi and
Wiley that plaintiff was under a "partial disability," serves
only "to undermine plaintiff's claim of entitlement to
disability benefits," as a complete disability is required for
benefits.  (Id. at 18).  As to Dr. Martin, defendant argues that
his report was also properly considered, noting that the ALJ
emphasized Dr. Martin's conclusions regarding plaintiff's
credibility and motivation to return to the workforce.  Finally,

---

[3] There was some confusion in plaintiff's initial briefing as to which reports were prepared by Ms. Stresky and which were prepared by a Dr. Baily.  (ECF No. 21-2, 19-20).

as to Ms. Stresky, defendant contends that her report was properly analyzed and is entitled to minimal weight because it substantially conflicts with other evidence on the record.  (ECF No. 21-2, 20).

The opinions of treating physicians are generally given a measure of deference by courts due to their "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone."  20 CFR 404.1527(a)(2).  If a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is given controlling weight.  Id.  However, "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

In contrast, a non-treating source is an examining physician who does not have an "ongoing treatment relationship" with the claimant.  20 CFR 404.1502.  A physician who has treated claimant only once is not entitled to the same deference as a treating physician, as they cannot provide an "expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir.1983); Tucker v. Astrue, No. 2:10-1982-

DCN-BHH, 2011 U.S. Dist. LEXIS 89070 at *11 (D.S.C. July 21, 2011).  As such, a physician must have treated the claimant for "long enough to have obtained a longitudinal picture" of claimant's impairments to be granted more weight than a non-treating source.  20 CFR 404.1527.

While not entitled to particular deference, nontreating source opinions may still be given substantial weight.  An ALJ is obligated to discuss and weigh each medical source opinion according to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician; and; (6) any other factors . . . which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2); see also Chapman v. Comm'r, No. SAG-11-274, 2012 U.S. Dist. LEXIS 180801, 5-6 (D. Md. 2012); Phillips v. Astrue, No. PWG-10-1475, 2012 U.S. Dist. LEXIS 74629 (D. Md. 2012).

Finally, determinations made by another agency, including Workers' Compensation determinations, are not binding on the ALJ.  20 CFR 404.1504.  These decisions are relevant, however, and "may provide insight into the individual's mental and physical impairment(s) and show the degree of disability

determined by these agencies based on their rules." SSR No. 06-
03p.  As such, they must be evaluated and weighed according to
the factors listed supra. (Id.).

### 1. Drs. Kazi and Wiley

The ALJ discussed and assigned little weight to the opinion
of Dr. Kazi. (R. 25).  In his analysis, the ALJ noted Dr.
Kazi's conclusion that electrodiagnostic testing suggested
brachial plexopathy involving plaintiff's lower trunk.  In
addition, the opinion notes plaintiff's statement to Dr. Kazi
that he was unable to use his right arm to move or lift even
light objects. (Id.).  The ALJ emphasizes, however, that Dr.
Kazi "noted no evidence of muscle atrophy, abnormal hair growth,
or nail changes." (Id.).  Dr. Kazi concluded that plaintiff was
entitled to a "thirty-three percent impairment of the person"
due to the injury. (Id.).  Ultimately, the ALJ gave the opinion
little weight primarily because "it is not consistent with the
longitudinal medical evidence of record." (Id.).

The ALJ similarly gave little weight to the opinion of Dr.
Wiley.  The ALJ noted that Dr. Wiley found that claimant's left
knee was essentially normal, with no crepitus, a full range of
motion, no increased heat, and cruciate and collateral ligaments
intact. (Id.).  The ALJ acknowledged Dr. Wiley's finding that
claimant had limited range of motion in his spine, had achieved

maximum medical improvement, and was 43% impaired.  As with Dr.

Kazi, however, the ALJ found that the opinion was not consistent

with the longitudinal medical evidence of record.  (Id.).

The Court finds these conclusions were appropriately

reached and are supported by substantial evidence.  At the

outset, defendant is correct that these are clearly not treating

source opinions.  (ECF No. 21-2, 18).  Dr. Wiley and Kazi did

not treat Mr. Weimer over a prolonged period of time; the record

indicates that they met with him on only one occasion.  As such,

they are not entitled to the deference assigned to treating

doctors who have a more complete knowledge of the claimant's

symptoms and history.  Mitchell, 699 F.2d at 187.

Moreover, the decision clearly indicates what weight is

given to each opinion.  While the Court acknowledges that the

ALJ supplied only a brief rationale for this assigned weight,

the analysis as a whole is sufficient to make the ALJ's

reasoning clear.  Specifically, the ALJ makes it clear that the

findings of Drs. Wiley and Kazi stood in contrast to the

conclusions of Dr. Russell, who treated plaintiff on several

occasions between 1999 and 2003, and to whose opinion the ALJ

gave substantial weight.  As such, the ALJ committed no error in

his analysis of these opinions.

### 2.  Dr. Russell

Plaintiff argues that Dr. Russell's opinion should only have been accorded limited weight because he only treated claimant through January of 2003. "His opinions on employability from 1999-2003" plaintiff argues, "ought not be controlling when considering whether or not the Plaintiff was disabled as of June 7, 2007." (ECF No. 13-1, 13). In addition, plaintiff argues that Dr. Russell's reports "continued to show a condition that was not expected to improve and would likely only get worse." (Id.). Plaintiff cites to a Dr. Russell's August 2002 opinion that plaintiff was "in a temporary total disabled status since on or before 5/20/2002 and that this is likely to continue." (Id.). Defendant generally replies that Dr. Russell's opinion was properly weighed and supported by the evidence on record. (ECF No. 21-2, 23-24).

Dr. Russell first treated Mr. Weimer on October 28, 1999 for a back injury. (R. 214). A MRI showed a "small central disc herniation at L5-S1." (Id.). Dr. Russell diagnosed a "sprain/strain type injury" and noted that the MRI findings "are quite possibly incidental." (R. 215.). He concluded that claimant would likely be able to return to work after 4-6 weeks. (Id.). A follow-up on November 19 indicated that claimant "no longer has any element of significant or constant pain," and that pain relating to the injury was only episodic. (R. 218).

In December 2000, Dr. Russell again saw Mr. Weimer and
treated him for pain in his upper limbs and knees following a
fall.  (R. 221).  Following an electrical study, Dr. Russell
concluded that claimant likely had a brachial plexopathy
involving the lower trunk.  (Id.).  In a January 2001 follow-up
Dr. Russell noted that Mr. Weimer was "not having much in the
way of sharp pain."  (R. 226).  In February 2001, Dr. Russell
noted that Mr. Weimer could return to work with some
limitations.  (R. 230).  A June 2001 follow-up electrical study
revealed no change.  (R. 234).  In November 2001 Dr. Russell
reiterated that plaintiff has a "light physical demand
capacity."  (R. 254).

Mr. Weimer began complaining of more severe pain in early
2002.  (R. 257).  He reported new soreness in his right arm in
March 2002.  (R. 258).  Dr. Russell reported in May 2002 that
"[a]t this point in time, Mr. Weimer has significant dysfunction
and impairment of the dominant, right upper limb."  (R. 260).
He prescribed OxyContin for pain relief. (R. 259).  Through the
course of 2002, Dr. Russell repeatedly and unsuccessfully
recommended that plaintiff go to the center for pain management
for treatment.  (R. 270, 271, 273, 275).  Plaintiff also began
requesting more pain medication.  (R. 276).

In January 2003, Dr. Russell noted that he was at a
"clinical impasse" with Mr. Weimer due to Mr. Weimer's refusal

16

to seek treatment for his pain.  Dr. Russell noted that Mr.
Weimer "seems more focused on reasons not to avail himself of
recommended treatment than anything else."  (R. 276).  Dr.
Russell noted that if claimant chose not to follow his
recommendations, he would need to find another doctor to
prescribe medication.  Finally, in May 2003 Dr. Russell noted
that urinalysis indicated an absence of OxyContinen, an unusual
finding for someone taking the drug three times a day, and
recommended evaluation and treatment for a possible addiction
problem.  (R. 315).  Dr. Russell discontinued treatment at this
point.  (Id.).

The ALJ gave "great weight" to Dr. Russell's opinion and
cited extensively to the above findings.  (R. 24-25).  The Court
finds that this decision was appropriately reached and is
supported by substantial evidence.  Dr. Russell treated
plaintiff many times over the course of several years and
offered a longitudinal view of claimant's medical history.  As
such, the ALJ appropriately granted his opinion greater weight
than that of Dr. Kazi and Wiley, who only met with claimant on
one occasion.

Plaintiff's argument that Dr. Russell's opinion was too
distant in time from plaintiff's onset date is unconvincing,
especially in light of plaintiff's position that Drs. Kazi and
Wily are entitled to substantial weight.  The medical evidence

on record indicates that Dr. Russell treated plaintiff through May 2003, not January 2003, as plaintiff suggests.  (R. 315). Yet plaintiff acknowledges that Dr. Kazi saw claimant only five months later, in October 2003.  (R. 284).  Dr. Wiley examined claimant one year later in June 2004. (R. 292).  Plaintiff does not indicate why these opinions, which also came far before plaintiff's application date in 2007, should be any more probative than Dr. Russell's.[4]  Like Dr. Russell, Dr. Kazi and Dr. Wiley both reviewed plaintiff for symptoms related to an injury in September of 2000.  Unlike Dr. Russell, however, they did not treat Mr. Weimer over the course of several years.  As such, the ALJ appropriately granted their opinions lesser weight.

### 3. Dr. Martin

Dr. Martin examined claimant on June 29 2005.  The examination was related to a workers' compensation claim.  Dr. Martin noted normal alignment of the right elbow, wrist, and finger joints.  (R. 314).  He also noted normal hair growth, skin color, and no dystrophic changes to the nails or skin.

---

[4] Plaintiff cites to no evidence on the record suggesting that claimant's condition was only expected to get worse.  Indeed, his only citation points to the contrary.  While plaintiff complained of increased pain in 2002, Dr. Russell's statement that plaintiff's condition is "likely to continue," implies only that Mr. Weimer's condition was static.  (R. 271).  It does not suggest that Dr. Russell expected claimant's condition to worsen.  There is also significant evidence on the record that Dr. Russell believed plaintiff would not improve because he was unwilling to seek out additional treatment. (R. 242, 276).

(Id.).  He found that plaintiff had "[i]ll-defined complaints in the right upper extremity with no clinical findings to support a diagnosis of reflex sympathetic dystrophy." (R. 315).  He emphasized that there was evidence in the record of "two previous medication use agreement violations resulting in discontinuation of care." (R. 315).  Dr. Martin concluded that plaintiff had a 28% whole person impairment, but emphasized that "an argument could be made for a 0% impairment." (R. 316).  He believed that plaintiff "is not motivated to return to the work force." (Id.).

The ALJ discussed the above findings in some detail. (R. 26).  It is clear that these conclusions do not, as whole, tend to support claimant's allegations regarding the extent of his impairment, and are in line with the final conclusion of the ALJ that claimant is not disabled.  Plaintiff is correct, however, that the ALJ did not explicitly indicate how much weight was given to Dr. Martin's opinion.

The Court finds this error to be harmless.  When the ALJ's opinion is consistent with that of a medical examiner, the failure to explicitly state how much weight was given to the doctor's opinion is harmless.  Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007).  Like Dr. Martin, the ALJ emphasized in his RFC analysis Mr. Weimer's possible addiction problem (R. 28), the lack of objective evidence indicating a disabling condition

(<u>id.</u> at 27-29), and Mr. Weimer's reluctance to take additional action to facilitate a return to work.  (R. 28).  Thus, while the ALJ erred in failing to state the weight given to Dr. Martin, it is clear that he accorded Dr. Martin's opinion some weight in formulating claimant's RFC.  <u>Chapman v. Astrue</u>, No. 4:07-02868-TLW-TER, 2010 U.S. Dist. LEXIS 7624 (D.S.C. Jan. 11, 2010)("Although the ALJ did not specifically discuss these opinions, he apparently accorded them substantial weight [in formulating plaintiff's RFC].").  As such, the Court finds that the ALJ's error in failing to explicitly allocate a weight to Dr. Martin is harmless.

### 4. Ms. Stresky

Ms. Stresky, CRNP, completed a Medical Assessment of Physical Ability to do Work Activities form on October 3, 2007. (R. 334).  She concluded that plaintiff had "frequently debilitating" pain and severely limited use of his right arm or hand.  (R. 333-334).  Her report indicated that plaintiff was capable of less than sedentary work.  (<u>Id.</u>).  Plaintiff argues that the "ALJ's absolute failure to identify Linda Stresky, CNRP as a medical source or to consider her opinion in combination with all other medical source opinions . . . left the ALJ decision lacking in substantial justification."  (ECF No. 24-1, 4).

While adjudicators are encouraged to make use of "other" medical evidence such as CRNP opinions, courts generally do not require that ALJs discuss or given weight to all "other" medical sources before them.  In Pascoe v. Astrue, for example, the Court found that the ALJ did not err in assigning no weight to a nurse practitioner, noting that such sources "may be used to evaluate the severity of a claimant's impairment and how such impairments impact the claimant's ability to work." No. 1:11-CV-226, 2012 U.S. Dist. LEXIS 114178, at *12 (W.D.N.C. July 22, 2012)(emphasis in original).  Similarly, in Thompson v. Astrue, the Court found that "[t]he agency may choose to use evidence from other sources to evaluate the severity of a claimant's impairments and how those impairments affect the claimant's ability to work, but it is not required to do so." No. 11-942, 2012 U.S. Dist. LEXIS 66247, at *4 (D. Md. May 11, 2012) (emphasis added).

Contrary to plaintiff's position, the ALJ here did cite to and briefly consider the assessment of Ms. Stresky, although he did not identify her by name.  (R. 27).  He assigned the opinion little weight, finding that it was not consistent with the medical record as a whole.  (Id.).  The Court notes that the opinions of CNRPs may be of substantial value, particularly when a CNRP has treated a claimant over a substantial period of time,

as was the case here.[5]  The Court finds, however, that the ALJ
committed no clear error here in his weighing of Ms. Stresky's
assessment.  As noted supra, substantial evidence on the record,
including the opinion of a long-term, treating physician,
contradicts Ms. Stresky's findings regarding the extent of
claimant's impairments.  In addition, as discussed in more
detail infra, the opinion is contradicted by some of Ms.
Stresky's later reports, including the notation in January 2008
that plaintiff "looks well" and was using his right hand
normally (R. 453) or the notation on December 18, 2009 that
"right hand is pain free." (R. 430).[6]  The ALJ's decision to
grant little weight to the opinion is therefore supported by the
substantial evidence in the record.  The circumstances of this
case do not compel a remand of this case for the clearer ALJ
consideration and explanation of the medical treatment provided
by Linda Stresky.  Moreover, accepting the law as described by
plaintiff (ECF No. 24 – 1,2), the record is far from clear that
CNRP Stresky "work [ed] closely under the supervision of an
accepted medical source" and there was no "report of an

---

[5] The record demonstrates that CNRP Stresky provided plaintiff's care on a
regular basis from May 31, 2005 until December 18, 2009.

[6] Ms. Stresky's opinion is seemingly contradicted by plaintiff's college
attendance in 2005 and 2006.  Claimant stated that he was enrolled in twelve
college credit hours in fall 2005, (R. 403), and attended school throughout
2006.  (R. 366, 371).  Plaintiff attained an Associate's degree in June 2008.
(R. 23, 43, 51).  Plaintiff had to drive 30 miles round trip to attend
courses.  (R. 23, 61).

interdisciplinary team" of which Ms. Stresky's evaluation was part.  While a more thorough discussion of Ms. Stresky's treatment would have been preferable, the Court cannot say failure to do so here was clear error.

Accordingly, the Court finds that the ALJ's consideration and assigned weight afforded these health care providers are supported by substantial evidence.[7]

## B. The Appeals Council's Treatment of New Evidence Submitted By Plaintiff

Plaintiff argues that the Appeals Council erred when it failed to include and consider new and material evidence on review.  (ECF No. 13-1, 15).  Plaintiff argues that the Appeals Council "summarily rejected" medical reports submitted by plaintiff on appeal.  (Id. at 16).  Plaintiff contends that remand is appropriate for further consideration of this evidence.  (Id.).

Defendant responds that the evidence is neither new nor material.  Defendant notes that the majority of the information

---

[7] Stepping back from the dueling arguments of the parties on the proper weight to be given different doctors and reports, the hypothetical that ALJ posed is informative.  The Court notes that the hypothetical posed to the VE included very limited functionality of the upper right extremities (R. 68) ("A limited range of light, that is to say less than five pounds with the – well he's pretty much ambidextrous, five pounds with the right upper extremity on lifting and carrying. . . Handling, that is to say gripping and grasping of the upper right extremity is only occasional, it can be used as assisted device, in other words to assist.") The ALJ also included a level of pain and some side effects of his pain medication in the hypothetical posed to the VE. (R. 69).

merely duplicates reports already found on the record.  (ECF No. 21-2, 26).  The small amount of new evidence offered, defendant contends, substantially conforms to the existing information on record and therefore is not material.  (Id. at 27-29).

The Appeals Council must consider additional evidence when it is new, material, and relates to the period on or before the date of the administrative law judge hearing decision.  20 CFR 404.970; Wilkins v. Secretary, Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).  Evidence is new if it is not duplicative and cumulative.  Wilkins, 953 F.2d at 96.  Evidence is material if "there is a reasonable possibility that the new evidence would have changed the outcome."  Id.

The Appeals Council is under no obligation to "articulate its rationale for denying a request for review."  Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011).  However, this Court must review the record as a whole, including additional evidence submitted to the Appeals Council, to determine whether the ALJ's denial of benefits was supported by substantial evidence.[8]  Id. at 707; Wilkins, 953 F.2d at 96 (reviewing a treating physician opinion submitted to the appeals council, finding that remand was appropriate where this opinion was material and not contradicted by the record.).

_____

[8] While the Appeals Council neglected to make plaintiff's submission part of the record, plaintiff attached the submission to his opening brief.  (ECF No. 13-2, 13-3, 13-4).  As such, the Court has the information necessary to conduct its review, and the Appeals Council's error was harmless.

After a review of the record, the Court agrees with defendant that the majority of the information submitted to the Appeals Council is duplicative of medical reports already found in the ALJ's record.   Compare ECF No. 13-4, 6-59; R. 409-62. Several doctor's reports in the submission were not, however, found in the ALJ's record.  (ECF No. 13-2; 13-3; 13-4, 1-5). As such, the Court must determine whether, in light of these records, the ALJ's conclusion is still supported by substantial evidence.

The new information in the submission includes four treatment reports from Ms. Stresky from early 2010.  One report from 4/27/10 indicates that plaintiff had back and neck pain following what appears to be a minor car accident.  (ECF No. 13-4, 2).  Another from 2/12/2010 indicates that plaintiff was a no show for his appointment.  (Id. at 3).  A third report from 2/4/2010 mentions a lesion on plaintiff's face.  (Id. at 4).  A final report from 1/14/2010 notes a rash.  (Id. at 5).

First, Court notes that all but the last of these reports came after the ALJ decision.  Certainly any new injury related to a car crash that occurred almost three months after the ALJ opinion is not appropriate for Appeals Counsel review.  20 CFR 404.970(b)("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the

administrative law judge hearing decision.).  Moreover, to the extent that one or more of these reports do relate to the period prior to the ALJ decision, the Court agrees with defendant that they do not contain material evidence that counters the ALJ's initial disability assessment.  Plaintiff does not mention any of these injuries or impairments in briefing, or argue that they were expected to be long term or disabling.

Plaintiff also submitted two new opinion reports from Ms. Stresky: a "Pain Assessment" dated May 13, 2010, and a "Medical Assessment to do Work-Related Activities" also dated May 13, 2010.  (ECF No. 13-2; 13-3).  While these reports also come after the ALJ decision on February 3 2010, there is a stronger argument here that Ms. Stresky based these reports on her long-term evaluation of claimant, and as such they relate to the period prior to the ALJ decision.

In the Pain Assessment, Ms. Stresky indicates that plaintiff's pain is sufficient to affect adequate performance of daily activities of work.  (ECF No. 13-3, 1).  She notes that pain will be greatly increased by physical activity.  (Id.). She concludes that little improvement is likely.  (Id.).  In the assessment of work-related activities, Ms. Stresky rated claimant as capable of "less than sedentary work," primarily due to pain and weakness that prevent him from using his right hand

and arm for work (ECF No. 13-2, 5), but not "[t]otally disabled from any work activity." (Id. at 4).

The Court finds that these new opinions do not justify remand in this case.  First, the evidence mirrors similar opinions by Ms. Stresky in 2007, which the ALJ considered and gave little weight.  Second, there is no evidence of a new injury or exacerbation of an injury between Ms. Stresky's initial report in 2007 and these 2010 reports.  Finally, the Court finds, in line with the ALJ's decision, that these reports are substantially contradicted by existing evidence on the record.

As discussed supra, the ALJ considered a 2007 opinion from Ms. Stresky that concluded that plaintiff was severely limited in work-related abilities.  The ALJ granted the opinion little weight because "it is not consistent with the entire medical evidence of record."  (R. 27).

Plaintiff has provided no new evidence that rebuts the ALJ's conclusion.  The Court agrees with the ALJ's initial conclusion that substantial evidence on the record is contrary to Ms. Stresky's conclusion.  Indeed, there is substantial contrary evidence in Ms. Stresky's own notes.

In January 2008, Ms. Stresky noted that plaintiff was using his right hand normally.  (R. 453).  In April 2008, Ms. Stresky noted that while plaintiff experienced numbness in his fourth

and fifth finger, he could clap his hands and button buttons with his right hand.  (R. 452).  In both February and June 2009 Ms. Stresky noted that plaintiff was moving his right hand "well."  (R. 443, 439).  In December of 2009, Ms. Stresky reported that plaintiff's right hand was "pain-free."  (R. 430). These observations, along with the findings of Dr. Russell and Dr. Martin described supra, provide substantial support for the ALJ's conclusion that plaintiff did not experience pain or weakness in his right hand to the extent that Ms. Stresky's report concluded.  (R. 27).

## VI.   Conclusion

For the reasons set forth above, the Court finds that the ALJ committed no reversible error in his opinion.  Accordingly, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
Unites States Magistrate Judge